THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. EMILIO DUMAS CASTRO, Defendant and Appellant.

No. 6543. Argued June 15, 1937.—Decided June 25, 1937.

*C. H. Juliá* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The appellant was charged with murder and convicted of voluntary manslaughter. His first assignment of error is as follows:

"The lower court erred in denying the motion for a continuance presented by the attorney designated by the court at 12 o'clock noon when the jury was already being selected."

The facts which appear from the record are the following:

The offense with which the accused was charged was committed on October 20, 1934, and on November 22 of the same year, the accused, upon being arraigned, informed the court that his attorney was Alfonso Lastra Charriez, Esq., pleaded not guilty, and asked for a jury trial. The trial of the case was set for February 16, 1935, and then postponed because the accused stated that he was ill.

The case was set for trial on October 15, 1935, and when it was called Attorney Ramírez Viñas appeared representing the attorney of record, Alfonso Lastra Charriez, Esq., and requested a continuance on the ground that the defendant was ill. The court ordered Dr. Arsenio Comas to examine the accused and to inform the court whether or not he was ill. Said physician reported that the defendant was able to appear for trial, and the court then ordered the arrest of the defendant. As the attorney of record did not appear,

the court appointed Carlos H. Juliá, Esq., as counsel for the defendant and requested him to examine and select the jury which was to try the case. Said attorney moved for a postponement of the trial until 2 p. m. of the same day in order that he might determine whether he could or was in a position to take charge of the case. The court decided that the selection of the jury should be proceeded with and the trial postponed until 2:30 p. m. Counsel agreed and represented the accused in the selection of the jury, which was constituted without any difficulty. The attorney for the defense then requested time to prepare before going to trial. The court gave him until four o'clock in the afternoon for him to interview the witnesses for the defense. The defense took an exception because the time allowed was not reasonable.

The court, without any objection of the defense, made the following comments, which were incorporated in the record: "that lately, it has become customary for defendants in criminal proceedings to request the postponement of their respective trials, and when there are no special reasons for a postponement, or when the court denies the same, they feign a sickness and do not appear for trial on the day set"; that the court has ordered a medical examination of the accused and it has always resulted that the sickness alleged was nonexistent; that in the present case, four days before the one set for trial the accused stated to a member of the jury, who was also one of his sureties, that he would not appear for trial because his attorney would move for a continuance; that the motion for continuance was not presented until the very moment of the trial; that the court, having reason to believe that the alleged sickness did not actually exist, ordered an examination of the accused and the result was that the accused was not sick and was able to appear for trial; that if the court were to permit this practice to continue, the holding of trials would be left at the ·will of the accused; that if this were an ordinary case in which the accused without any fault on his part was deprived of his

attorney, the court would grant him all the time necessary, but as it was a case in which the accused, in the judgment of the court, had maliciously tried to postpone the trial, said accused had no right to invoke the discretion of the court.

The record shows that the trial was resumed at 4:25 p. m.; that after the examination of the medical expert and two witnesses for the prosecution, who were amply cross-examined by the defense, the court was adjourned until 9 a. m. of the following day, October 16, 1935; that the cross-examination of the witnesses for the prosecution continued all day during October 16, 1935, until 5 p. m., at which time the defense attorney requested and obtained the continuance of the case until the following day, "to outline our theory and begin with our evidence," and that on the 17th, that is, two days after the trial had commenced, the defendant introduced his evidence, tending to establish the theory of self-defense, and the defendant himself and five other witnesses testified, their testimony covering seventy pages of the transcript of the evidence. The record does not show that the accused was precluded from availing himself of other evidence because the continuance requested was not granted. And the manner in which the defense counsel examined the witnesses convinces us that the accused was ably defended and that he would not have gained by the postponement of the trial.

In the case of *People* v. *Arrocho,* 33 P.R.R. 627, cited by the appellant, the facts and circumstances involved were entirely different from those of the instant case. That was a case in which the defendants had been sentenced to death. The offense charged had been committed on February 20, 1924. The arraignment took place on March 11 of the same year, and the trial was set for six days later. The lower court refused to postpone the trial. And this Supreme Court reversed the judgment because in its opinion the defendants had not had a reasonable time to prepare their defense.

In the case before us the defendant had more than sufficient time and ample opportunity to prepare his defense.

From the date of the arraignment to the day set for trial ten months and fifteen days elapsed, during which time the accused was represented by an attorney chosen by him.

The objectionable procedure followed by the defendant and appellant in trying to obtain the postponement of the trial by false representations, and the fact we have stated that the refusal to postpone the trial did not cause any prejudice to the substantial rights of the accused, are, in our judgment, sufficient for us to hold that the lower court did not commit the error assigned.

██ The second assignment must be overruled as it is clearly frivolous. We agree with the appellant that the fact that the defendant and the deceased worked together in a certain primary elections held three months before the date on which the offense was committed, is immaterial and by itself insufficient to establish a motive for the crime. If there was any error in admitting evidence of said fact, the same could not in any way prejudice the accused.

██ The third assignment is as follows:

"The lower court erred in refusing to permit the accused to testify as to the opinion he had of the deceased in this case."

Let us relate the incident which gave rise to this alleged error. The defendant, in answer to questions put by his attorney, testified that he knew the deceased, even though he never had any dealings with him. The defense then asked: "What opinion did you have of the deceased in this case?" The district attorney objected, and requested that the jury retire while the legal question raised by his objection was discussed. The question was argued without the presence of the jury and the court decided it in favor of the district attorney, in the following manner:

"Judge: That is something as to which only the defendant will know, because the fear which a person may have of another can only be expressed by that person, as it is a psychic condition, something intimate which is known only by said person. If he states it to someone else it would be hearsay. For that reason, the defend-

ant's testimony is required. For self-defense he must admit the death, but that it was caused in self-defense, and then, if he wants to make use of the doctrine of apparent danger, then it must be shown that he really felt and had previously felt said fear, and the only way is by having the defendant so testify. No one can testify as to the thoughts and feelings of another person.

"Defense: We take an exception to the decision of the court because we think, that having laid the foundation that the accused did the killing, the accused has a perfect right now to state the opinion he had of the reputation of the deceased when the death occurred.

"Judge: If we accepted that doctrine we would be reaching an absurd result; that because a person has a bad reputation anyone could deprive him of his life. You may call the jury. (The jury returned.) You may proceed with the witness."

Immediately thereafter the accused testified thus: That he was the one who wounded the deceased and that subsequently he learned that the latter had died; that he knew Isidro Herranz, the deceased, before the facts occurred; that he had been informed that the deceased was a criminal; that he knew that the deceased was a dangerous man, a bandit who had served sentences for rape, the crime against nature, for having wounded another in the head, etc.; that he knew that the deceased was a dangerous person; that the entire community so considered him; and that he was afraid of him.

We do not think that the court committed the error assigned, nor that the decision of the court prejudiced the defendant. The latter was allowed to testify as to the opinion which he had of the deceased and as to the bad reputation of the latter in the community. The decision of the court to the effect that self-defense should have been established or the admission that the accussed had caused the death of the deceased before the accused could be permitted to testify as to the character or reputation of the deceased, agrees with the legal doctrine established by the decisions. See *People* v. *Sutton,* 17 P.R.R. 227 and *People* v. *Lannause,* 30 P.R.R. 679.

The general rule is that evidence as to the character or reputation of the deceased is not admissible. The prosecution can not offer evidence in the first instance to prove that the deceased was a man of good reputation, quiet, and peaceful. Such evidence when presented by the prosecution is admissible only in case the defendant attempts to prove that the deceased was a violent and dangerous character. The rule as to the admissibility of that kind of evidence, when offered by the defense, is stated by Corpus Juris, thus:

"The violent, revengeful, bloodthirsty character of deceased cannot be shown in excuse or palliation of the homicide, for the unprovoked killing of a bad man is no less murder than the killing of the most peaceful and law-abiding person in a community.

"Where there is evidence tending to show self-defense or the character of the transaction is in doubt the reputation of deceased for being a violent and dangerous character can be shown for the purpose of showing a reasonable apprehension of immediately impending danger on the part of defendant, particularly under the circumstances prevailing at the time of the homicide."

30 C. J., pp. 172, 173, 229, secs. 395, 396, 465.

 The fourth and last assignment is as follows:

"The lower court erred in permitting the district attorney to cross-examine the defendant as to whether he had served any sentence, and subsequently to ask him specifically whether he had been convicted of aggravated assault and battery."

The defendant, in answering questions put to him by the district attorney, admitted that the knife shown to him by the district attorney was the same one that he had taken from the show case. And when asked whether he had sharpened the knife, the defendant answered: "I do not carry such a weapon." Then the following incident occurred:

"Q. Have you been convicted of carrying a weapon?
"A. For carrying a revolver, yes.
"Q. But you served a sentence?
"A. Yes, sir, 30 days, that is 25. That was about 12 years ago.
"Q. Had you been convicted of aggravated assault and battery?
"A. Where?"

The attorney for the defense, then requested that the jury retire. After the jury had withdrawn, the objection of the defense to having the defendant answer the question of the district attorney was argued, the defense contending that such evidence was inadmissible, as the defendant had not presented any evidence regarding his good reputation. The court held that as the defendant had testified that he never carried a weapon, the district attorney had the right to ask him if he had ever been convicted of the offense of carrying one, not to prove the bad reputation of the accused, but to impeach his credibility. The district attorney then withdrew his question, which had not been answered, and at the request of the defense it was ordered that the same be stricken from the record. The second error assigned, then, was not committed. Nor did the court commit the first error assigned. The district attorney was correct in impeaching the credibility of the accused in the manner he did. The defendant can not be compelled to testify; but when he exercises his right to take the witness stand, from that moment he is subject to all the rules of evidence the same as any other witness.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.